1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| B-K LIGHTING, INC., a California corporation, | CASE NO. CV 06-02825 MMM (PLAx) |
| Plaintiff, | ORDER AWARDING FVC ATTORNEYS' FEES |
| vs. | |
| VISION3 LIGHTING, a business entity of unknown form, and FRESNO VALVES & CASTINGS, INC., a California Corporation, | |
| Defendants. | |

This case involved a patent dispute between plaintiff B-K Lighting, Inc. and defendant Fresno Valves & Casting, Inc. Having previously declared the case exceptional and concluded that it was appropriate to award attorneys' fees to FVC, which prevailed on B-K's affirmative claims, the court now evaluates the reasonableness of the fees requested.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The court has issued multiple orders detailing the factual and procedural background of this litigation. By way of summary, on May 23, 2008, the court granted FVC's motion for summary

1    judgment, finding, based on undisputed evidence, that the patent-in-suit was invalid as obvious.[1]

2    Given this conclusion, the court declined to consider the other invalidity and enforceability

3    arguments FVC raised, as well as the parties' arguments concerning infringement.[2]

4          Also on May 23, the court addressed B-K's motion for summary judgment on FVC's

5    counterclaim alleging violation of California Business and Professions Code § 17200.[3]   The

6    counterclaim had three bases: first, FVC argued that a press release issued by B-K was timed to

7    damage FVC's business relationships; second, it asserted that B-K had filed the litigation in bad

8    faith and that its claims were meritless; and third, FVC alleged that B-K had stolen a FVC

9    prototype from a lighting industry exhibition.[4]   The court found that FVC had raised triable issues

10   of fact regarding the § 17200 claim only to the extent it was based on the alleged theft.   Summary

11   judgment on that aspect of the claim was denied; it was entered, however, on so much of the claim

12   as concerned the issuance of the press release and the filing of this litigation.[5]   The court

13   subsequently directed the parties to file a stipulation permitting entry of an order of dismissal on

19   [1]See Order Granting Fresno Valves' Motion for Summary Judgment of Invalidity on
20   Grounds of Obviousness ("Patent Summary Judgment Order"), Docket No. 235 (May 23, 2008).

21   [2]Id. at 45 ("Because the court finds that the '084 patent is invalid as obvious, it does not
     address the parties' motions with respect to the remaining invalidity defenses, or with respect to
22   infringement").   On July 21, 2008, the parties stipulated to the entry of a judgment that dismissed
     the remainder of FVC's invalidity and unfair competition counterclaims without prejudice.   (See
23   Judgment and Order of Dismissal, Docket No. 266 (July 21, 2008).)

25   [3]See Order Granting in Part and Denying in Part B-K Lighting's Motion for Summary
     Judgment on FVC's § 17200 Claim ("§ 17200 Summary Judgment Order"), Docket No. 236
26   (May 23, 2008).

27       [4]Id. at 11.

28       [5]Id. at 18-19.

1    the theft of the prototype § 17200 counterclaim,[6] which the parties did on July 7, 2008.[7]

2        Also on July 7, FVC filed a motion seeking a declaration that the case was exceptional and
3    an award of attorneys' fees and expenses under 35 U.S.C. § 285 as well as sanctions under 28
4    U.S.C. § 1927.  FVC asserted that B-K had engaged in inequitable conduct before the patent
5    office, as well as misconduct during the course of the litigation, and that the action was frivolous
6    and pursued in bad faith.[8]  After a hearing on the attorneys' fees motion on August 25, 2008, the
7    court took the matter under submission to consider the arguments of counsel.[9]  On November 14,
8    2008, the court issued an order awarding FVC attorneys' fees under 35 U.S.C. § 285.[10]

9        Meanwhile, FVC filed an application to tax costs.[11]  B-K opposed the application on the
10   ground that FVC had not prevailed and was therefore not entitled to a costs award.[12]  As a
11   consequence, the court clerk notified the parties that a court order identifying the prevailing party
12   was needed before action on the application for costs could be taken.  FVC moved for a

13   _____

14   [6]See Order Denying *Ex Parte* Application for Clarification, Docket No. 247 (July 3, 2008) at 8.

15
16   [7]See Stipulation for Entry of Judgment and Dismissal of Claims, Docket No. 255 (July 7, 2008) at 2 ("It is further stipulated that FVC's counterclaim for unfair business practices under
17   the California Business & Professions Code, to the extent based on the alleged theft of its prototype light fixture, be dismissed without prejudice").

18
19   [8]See Notice of Motion and Motion to Declare Case Exceptional and for Award of Attorneys' Fees and Expenses, Docket No. 250 (July 7, 2008).

20   [9]See Minutes of Motion Hearing, Docket No. 303 (Aug. 25, 2008).

21
22   [10]See Order Granting FVC's Motion for Attorneys' Fees ("Fees Award Order"), Docket No. 316 (Nov. 14, 2008).  FVC's motion for sanctions was denied.  (*Id.* at 40-41 ("Because it
23   concludes that both parties engaged in overly aggressive, time-consuming and expensive litigation tactics, the court declines to conclude that either unnecessarily multiplied proceedings such that
24   sanctions should be awarded").)

25   [11]See Fresno Valves & Castings, Inc.'s Amended Notice of Application to the Clerk to Tax Costs ("FVC Appl. to Tax Costs"), Docket No. 296 (Aug. 18, 2008).  The application listed costs
26   totaling $24,319.87.  (*Id.*)

27   [12]See B-K Lighting's Objections and Response to Fresno Valves' Bill of Costs ("B-K Costs
28   Objections"), Docket No. 300 (Aug. 19, 2008) at 2.

1    determination that it was the prevailing party.[13]  On November 25, 2008, the court granted FVC's

2    motion in part, finding that it was the prevailing party with respect to B-K's affirmative claims.[14]

3    In view of the fact that B-K prevailed on two-thirds of FVC's tripartite § 17200 counterclaim,

4    however, the court held that B-K had also prevailed, albeit to a limited extent.[15]  Accordingly, the

5    court exercised its discretion to apportion costs between the parties, concluding that FVC should

6    recover 80 percent of the costs deemed recoverable by the clerk of the court.[16]

7            Because FVC had submitted no documentation supporting its fees motion, the court

8    directed it to provide a detailed accounting of the hours expended and rates charged, as well as

9    further legal and/or evidentiary support for the amount sought.[17]  FVC filed a supplemental

10    pleading on December 1, 2008.[18] B-K filed a responsive pleading on December 15.[19]  On June 17,

11    2009, the court issued an order directing FVC to file additional evidence in support of its

12    requested hourly rates.[20]  FVC filed additional evidence pursuant to the court's order on June 23,

[13]See Notice of Motion and Motion for Determination of Prevailing Party, Docket No. 311 (Oct. 20, 2008) at 1.

[14]See Order Granting FVC's Motion for Determination of Prevailing Party in Part ("Prevailing Party Order"), Docket No. 317 (Nov. 25, 2008) at 5.

[15]*Id.* at 6-7.

[16]*Id.* at 8-9.

[17]Fees Award Order at 41.

[18]See Supplemental Brief in Support of Attorneys' Fees and Expenses to be Awarded to Fresno Valves & Castings, Inc. ("FVC Suppl. Fees"), Docket No. 318 (Dec. 1, 2008); Declaration of Duane Mathiowetz in Support of Attorneys' Fees and Expenses to be Awarded to Fresno Valves & Castings, Inc. ("Mathiowetz Decl."), Docket No. 319 (Dec. 1, 2008).

[19]See Plaintiff B-K Lighting, Inc.'s Response to Defendant Fresno Valves' Supplemental Brief in Support of Attorneys' Fees and Expenses Award ("B-K Suppl. Resp."), Docket No. 320 (Dec. 15, 2008); Declaration of Jennifer A. Trusso in Support of Plaintiff B-K Lighting, Inc.'s Response to Defendant Fresno Valves' Supplemental Brief in Support of Attorneys' Fees and Expenses Award ("Trusso Decl.").

[20]See Amended Order Directing Defendant to File Supplemental Evidence in Support of Requested Hourly Rates, Docket No. 324 (June 17, 2009).

1    2009.[21]

2

3                              **II.  DISCUSSION**

4    **A.       Legal Standard Governing Attorneys' Fees in Patent Cases**

5         "The court in exceptional [patent] cases may award reasonable attorneys fees to the

6    prevailing party." 35 U.S.C. § 285.  The statute is designed "to compensate the prevailing party

7    for its monetary outlays in the prosecution or defense of the suit," *Central Soya Co. v. Geo. A.*

8    *Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983), and to serve " as a deterrent to 'improper

9    bringing of clearly unwarranted suits' for patent infringement," *Automated Business Companies,*

10   *Inc. v. NEC America, Inc.*, 202 F.3d 1353, 1355 (Fed. Cir. 2000) (quoting *Mathis v. Spears*, 857

11   F.2d 749, 754 (Fed. Cir. 1988)).[22]

12        "A case may be deemed exceptional when there has been some material inappropriate

13   conduct related to the matter in litigation, such as willful infringement, fraud or inequitable

14   conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation,

15   conduct that violates Fed.R.Civ.P. 11, or like infractions." *Brooks Furniture Mfg., Inc. v.*

16   *Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005) (citing *Cambridge Prods. Ltd. v. Penn*

17   *Nutrients, Inc.*, 962 F.2d 1048, 1050-51 (Fed. Cir. 1992)); see *Braessler, U.S.A. I, L.P. v.*

18

19        [21]See Notice of Manual Filing, Supplemental Declaration of Duane Mathiowetz in Support

20   of Attorneys' Fees and Expenses ("Suppl. Mathiowetz Decl."), Docket No. 329 (June 23, 2009).
     FVC filed an *ex parte* application to seal this supplemental filing, which the court granted.  (See

21   Docket Nos. 333, 335.)

22        [22]The Federal Circuit has noted that § 285's deterrent purpose justifies awards above and

23   beyond the cost of legal services.  See *Mathis*, 857 F.2d at 754 ("No award under Section 285 can
     fully compensate a defendant subjected to bad faith litigation, e.g., for loss of executives' time and

24   missed business opportunities.  Thus that defendant cannot be fully returned to 'the situation he
     would have occupied if the wrong had not been committed.' [citing *Albermarle Paper Co. v.*

25   *Moody*, 422 U.S. 405, 418-19 (1975)] In determining the compensatory quantum of an award

26   under Section 285 in such an egregious case, therefore, courts should not be, and have not been,
     limited to ordinary reimbursement of only those amounts paid by the injured party for purely legal

27   services of lawyers, or precluded from ordinary reimbursement of legitimate expenses defendant

28   was unfairly forced to pay").

                                          5

1  *Stryker Sales Corp.*, 267 F.3d 1370, 1380 (Fed. Cir. 2001) ("The prevailing party may prove the
2  existence of an exceptional case by showing: inequitable conduct before the PTO; litigation
3  misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful
4  infringement").

5      "[U]se of the term 'exceptional' in § 285 is not to be taken lightly." *Visto Corp. v. Sproqit*
6  *Technologies, Inc.*, No. C-04-0651 EMC, 2007 WL 160942, *2 (N.D. Cal. Jan. 17, 2007).
7  "Congress in choosing to limit district court authority to award attorney's fees to 'exceptional'
8  cases has made clear that this should occur only in rare or extraordinary cases. . . . [Thus,] courts
9  elucidating this statutory language have generally found that 'exceptional' cases are those rare or
10 extraordinary cases blighted and marked by a party's bad faith or inequitable conduct." *Knorr-*
11 *Bremse Systeme Fuer Nutzfarzeuge GmbH v. Dana Corp.*, 372 F.Supp.2d 833, 848 (E.D. Va.
12 2005). Consequently, a court that intends to award fees under § 285 must make a finding that a
13 party took "egregious action . . . such that fees must be awarded . . . to prevent a gross injustice."
14 *Visto*, 2007 WL 160924 at *2.

15     To decide "whether a case is exceptional and, thus, . . . warrant[s] an award of attorney
16 fees under § 285 is a two-step process in which the district court must (1) determine whether there
17 is clear and convincing evidence that a case is exceptional . . . and (2) if so, . . . determine in its
18 discretion whether an award of attorney fees is justified." *Digeo, Inc. v. Audible, Inc.*, 505 F.3d
19 1362, 1366-67 (Fed. Cir. 2007). On appeal, the court's finding on the first question is reviewed
20 for clear error while its finding on the second is reviewed for abuse of discretion. *Id.* Although
21 a court may not award attorneys' fees absent a finding that a case is exceptional, it *may* decline
22 to award fees in an exceptional case in its discretion. See *Enzo Biochem, Inc. v. Calgene, Inc.*,
23 188 F.3d 1362, 1370 (Fed. Cir. 1999) ("[I]f the case is found to be exceptional, the district court
24 must then determine whether attorney fees should be awarded").

25     As noted, the court previously concluded that this case was "exceptional" within the
26 meaning of § 285 and that awarding FVC fees was justified.[23] The final step is a calculation of

27 _____

28     [23]Fees Award Order at 38-40.

6

1   the amount of attorneys' fees FVC is entitled to recover.  See, e.g., *Nikko Materials USA, Inc.*

2   *v. R.E. Service Co., Inc.*, No. C 03-2549 SBA, 2006 WL 118438, *6 (N.D. Cal. Jan. 13, 2006)

3   (procedure for awarding fees consists of determining "(1) whether there is clear and convincing

4   evidence that the case is exceptional; (2) if so, whether an award of attorney fees is warranted;

5   and (3) whether the attorney fees sought are reasonable in amount" (citing *Interspiro USA, Inc.*

6   *V. Figgie Int'l Inc.*, 18 F.3d 927, 933 (Fed. Cir. 1994); *Machinery Corp. of America v. Gullfiber*

7   *AB*, 774 F.2d 467, 470 (Fed. Cir. 1985)).

8       **B.    Calculation of the Amount of Attorneys' Fees**

9           Once a party has established that it is entitled to an award of attorneys' fees, "[i]t remains

10   for the district court to determine what fee is 'reasonable.'"  *Hensley v. Eckerhart*, 461 U.S. 424,

11   433 (1983) (quoting *Nadeau v. Helgemoe*, 581 F. 2d 275, 278-79 (1st Cir. 1978)).  "The Federal

12   Circuit has emphasized that a reasonable attorney fee is 'a determination that lies primarily within

13   the discretion of the district court,' which may 'consider all the relevant circumstances in a

14   particular case.'"  *Takeda Chemical Industries, Ltd. v. Mylan Laboratories, Inc.*, Nos. 03 CIV.

15   8253(DLC), 04 CIV.1966(DLC), 2007 WL 840368, *3 (S.D.N.Y. Mar. 21, 2007) (quoting

16   *Junker v. Eddings*, 396 F.3d 1359, 1365-66 (Fed. Cir. 2005)).

17           "The lodestar method is the proper method to use under 35 U.S.C. § 285 and is presumed

18   to be the reasonable fee."  *Comark Communications, Inc. v. Harris Corp.*, No. CIV. A. 95-2123,

19   1998 WL 150946 (E.D. Pa. Mar. 30, 1998) (citation omitted), aff'd, 156 F.3d 1182 (Fed. Cir.

20   1998).  "Under this approach, the Court first determines a lodestar figure by multiplying the

21   number of hours reasonably spent on the litigation by a reasonable hourly rate."  *ICU Medical,*

22   *Inc. v. Alaris Medical Systems, Inc.*, No. SA CV 04-00689 MRP (VBKx), 2007 WL 6137002,

23   *1 (C.D. Cal. June 28, 2007), aff'd, 558 F.3d 1368, 1380 (Fed. Cir. 2009) ("We affirm the

24   district court's award of attorney fees.  The district court applied the appropriate legal standard

25   and articulated several bases in support of the award, none of which ICU has shown to be clearly

26   erroneous"); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1068 (Fed. Cir. 1983) ("In

27   determining the reasonableness of the award, there must be some evidence to support the

28   reasonableness of, *inter alia*, the billing rate charged and the number of hours expended"

1   (citations omitted)).[24]

2       The court determines a reasonable hourly rate by looking to the prevailing market rate in

3   the community for comparable services.  See *ICU Medical, Inc.*, 2007 WL 6137002 at *1 ("The

4   reasonable hourly rate is also usually determined by reference to the rates charged by lawyers in

5   the same legal community with comparable skills and reputations," citing *Blum v. Stenson*, 465

6   U.S. 886, 895 (1984)); see also, e.g., *Bell v. Clackamas County*, 341 F.3d 858, 868 (9th Cir.

7   2003); *View Engineering, Inc. v. Robotic Vision Systems, Inc.*, 208 F.3d 981, 987 (Fed. Cir.

8   2000).  The party requesting fees bears the burden of producing satisfactory evidence that the

9   requested rates are in line with prevailing rates for lawyers of reasonably comparable skill and

10  reputation in the community.  *View Engineering*, 208 F.3d at 987 (citing *Jordan v. Multnomah*

11  *County*, 815 F.2d 1258, 1263 (9th Cir. 1987)).

12      "This presumptively valid lodestar figure may then be increased or decreased in 'rare' or

13  'exceptional' cases based on an evaluation of the *Kerr* factors not already subsumed in the initial

14  lodestar calculations, if those adjustments are supported by 'specific evidence' and 'detailed

15  findings' by the trial court."  *ICU Medical, Inc.*, 2007 WL 6137002 at *1 (citing *Pennsylvania*

16  *v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986), and *Van Gerwen*

17  *v. Guarantee Mutual Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000)).  After computing the

18  lodestar, therefore, the court must assess whether additional considerations require adjustment of

19  the figure, such as the novelty and complexity of the issues, the specific skill and experience of

20  counsel, the quality of representation and the results obtained.[25]  See *Kerr*, 526 F.2d at 70; see

21  ──────────────────

22      [24]The following additional factors are subsumed into the initial lodestar calculation: (1) the
    novelty and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality
23  of representation; (4) the results obtained; and (5) the contingent nature of the fee agreement.  See,
    e.g., *ICU Medical, Inc.*, 2007 WL 6137002 at *1 (citing *Kerr v. Screen Extras Guild, Inc.*, 526
24  F.2d 67, 70 (9th Cir. 1975) (establishing "reasonable" lodestar calculation factors); *Morales v.*
    *City of San Rafael*, 96 F.3d 359, 363-64 (9th Cir. 1996) (explaining which *Kerr* factors are
25  relevant to, or "subsumed by," the initial lodestar determination)).

26

27      [25]"The twelve *Kerr* factors bearing on the reasonableness [of the fee] are: (1) the time and
    labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to
28  perform the legal service properly; (4) the preclusion of other employment by the attorney due to

1    also *Blum*, 465 U.S. at 989-900; *Clark v. City of Los Angeles*, 803 F.2d 987, 990-91 & n. 3 (9th

2    Cir. 1986); *Cunningham v. County of Los Angeles*, 879 F.2d 481, 484 (9th Cir. 1988).

3           "A strong presumption exists that the lodestar . . . represents a reasonable fee." *G & G*

4    *Fire Sprinklers, Inc. v. Bradshaw*, 136 F.3d 587, 600 (9th Cir. 1998), vacated on other grounds,

5    526 U.S. 1061 (1999).  "[T]hus a multiplier may be used to adjust the lodestar amount upward

6    or downward only in rare and exceptional cases, supported by both specific evidence [in] the

7    record and detailed findings by the lower courts that the lodestar amount is unreasonably low or

8    unreasonably high."  See *Van Gerwen*, 214 F.3d at 1045 (internal quotations omitted).

9           In determining a reasonable attorneys' fee award, courts look to evidence such as "hourly

10    time records, full expense statements, documentation of attorney hourly billing rates in the

11    community for the particular type of work involved, the attorney's particular skills and

12    experience, and detailed billing records or client's actual bills showing tasks performed in

13    connection with the litigation."  *Junker*, 396 F.3d at 1366.

### 1.    Counsel's Hourly Rates

15           To calculate the lodestar figure, the party seeking fees must submit "satisfactory evidence

16    . . . that the requested rates are in line with those prevailing in the community for similar services

17    by lawyers of reasonably comparable skill, experience, and reputation."  *Blum*, 465 U.S. at

18    895-96 n. 11.  The relevant community is that in which the district court sits.  See *Schwartz v.*

19    *Secretary of Health and Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995).  Declarations regarding

20    the prevailing market rate in the relevant community suffice to establish a reasonable hourly rate.

21    See *Widrig v. Apfel*, 140 F.3d 1207, 1209 (9th Cir. 1998); *Guam Soc'y of Obstetricians &*

22    *Gynecologists v. Ada*, 100 F.3d 691, 696 (9th Cir. 1996) (noting that declarations from attorneys

23    in the community can provide adequate proof of the reasonableness of counsel's rates); see also

acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time
limitations imposed by the client or the circumstances; (8) the amount involved and the results
obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of
the case; (11) the nature and length of the professional relationship with the client; and (12)
awards in similar cases."  *Morales*, 96 F.3d at 363-64 n. 8 (citing *Kerr*, 526 F.2d at 70).

*Earthquake Sound Corp. v. Bumper Industries*, 352 F.3d 1210, 1215 (9th Cir. 2003) (discussing the affidavit of "an attorney practicing in the same region as Earthquake's attorneys," who opined that "Earthquake's attorney rates were reasonable and customary").

Courts also frequently use survey data in evaluating the reasonableness of attorneys' fees. *Mathis*, 857 F.2d at 755-56 ("Again pointing to no evidence in the record, Mathis labels 'inconclusive' American Patent Law Association [ ] surveys for 1981 and 1983, and an American Intellectual Property Law Association [ ] 1985 survey of Los Angeles-area patent-lawyer billing rates to which the district court referred in assessing the reasonableness of the rates charged Hydro. . . .  As the law makes clear, the district court properly considered the surveys.  See *Hensley*, 461 U.S. at 430 n. 3 . . . (customary fee a factor to guide determination of 'reasonable attorney's fee') . . ." (citation omitted)); see also, e.g., *Takeda Chemical Industries, Ltd.*, 2007 WL 840368 at *3 ("In determining a reasonable rate, a court may refer to American Intellectual Property Law Association ('AIPLA') surveys," quoting *Mathis*, 857 F.2d at 755); *Trend Products Co. v. Metro Industries Inc.*, 1989 WL 418777, 10 U.S.P.Q.2d 1539, 1540 (C.D. Cal. 1989) ("The American Intellectual Property Law Association has conducted a survey to ascertain billing rates of patent lawyers in various geographical areas, including the Los Angeles area.  The reports attached to Mr. Barclay's declaration indicate that all rates submitted to the Court are under the median rate for this geographical area. . . .  Based upon the survey and other cases this Court has seen, this requested rate for attorney fees for the years in question are very reasonable").

In support of its motion for fees, FVC originally submitted the declaration of Duane Mathiowetz, counsel of record and a partner in the law firm of Howrey LLP.  In its response, B-K did not challenge the reasonableness of FVC's requested rates.  In response to the court's order requesting further information on the hourly rates requested, Mathiowetz submitted a supplemental declaration providing additional information regarding the reasonableness of the rates detailed in FVC's initial filing.

According to Mathiowetz, each member of FVC's counsel at Howrey focuses on patent

litigation on a daily basis.[26]  The hourly rates for Howrey associates ranged from $225 to $355, and the hourly rates for Howrey partners ranged from $465 to $655.[27]  Mathiowetz, who led the litigation team and was responsible for the day-to-day management of this case,[28] is a partner in Howrey's Intellectual Property Group in San Francisco, and has over 25 years of experience litigating complex intellectual property matters.[29]  His billing rate ranged from $540 to $655 per hour over the course of the litigation.[30]  K.T. Cherian, another partner in Howrey's Intellectual Property Group who focuses on intellectual property litigation and has over 20 years of relevant litigation experience, provided guidance relating to litigation strategy and was involved with client management and conferring with opposing counsel in the early stages of the case.[31]  His billing rate ranged from $540 to $570 per hour over the course of his involvement in this case.[32]  Scott Wales, a partner in Howrey's Intellectual Property group whose practice focuses on intellectual property litigation (including patent litigation in electrical, mechanical and chemical technologies), assisted with the briefing of FVC's motion to dismiss and provided strategic guidance in the early

---

[26]FVC Suppl. Fees at 7; Mathiowetz Decl., ¶¶ 8, 15.

[27]Mathiowetz Decl., Exh. 1; Suppl. Mathiowetz Decl., ¶¶ 6-13.

[28]Suppl. Mathiowetz Decl., ¶ 7 ("I was responsible for and oversaw all discovery issues, took and defended the depositions, oversaw substantive briefing, directed legal research and investigation, worked with expert witnesses, corresponded and negotiated with opposing counsel, argued motions before the Court, oversaw and prepared the case for trial, attended to pretrial and trial issues, and provided strategic guidance relating to substantive and procedural issues at all stages of the case.  Throughout much of 2006 and late into 2007, I was the sole attorney working on the case, with occasional assistance from others when I was fully occupied with other matters").

[29]Id., ¶ 6.

[30]Id., ¶ 7.  For each Howrey lawyer assigned to this case, fees typically increased in August of each year per firm guidelines.

[31]Id., ¶ 8.

[32]Id.

stages of the case.[33]  His billing rate ranged from $465 to $495 per hour over the course of his involvement in this case.[34]  Lorrel Birnschein, who worked in the Intellectual Property Group as a mid-level associate before leaving Howrey in late 2006, conducted legal research and prepared motions on behalf of FVC at a billing rate of $355 per hour.[35]  Irene Yang, a third-year associate whose practice focuses on patent litigation covering a variety of technologies, including mechanical and electrical technologies and medical devices, conducted legal research, prepared briefings and filings, prepared for depositions, worked with experts, prepared briefings for mediation, argued motions, and assisted with pretrial filings.[36]  Her billing rate ranged from $315 to $350 per hour during her involvement with this case.[37]  Seth Herring, a second-year associate whose focus is intellectual property litigation, conducted legal research at a rate of $225 per hour during his involvement in this case.[38]  Finally, Todd Chesnut, a senior paralegal in Howrey's San Francisco office, assisted in the preparation and filing of motions and briefs with the court, pretrial matters and discovery matters.  His billing rate ranged from $245 to $265 per hour over the course of the case.[39]

FVC's outside patent counsel, Haynes Beffel & Wolfeld, also contributed to this litigation. HBW is an intellectual property counseling and patent prosecution firm with in-depth technical experience in a variety of technologies, including electrical, software-related, optics, medical

---

[33]*Id.*, ¶ 9.

[34]*Id.*

[35]*Id.*, ¶ 10.

[36]*Id.*, ¶ 11.

[37]*Id.*

[38]*Id.*, ¶ 12.  Herring also prepared briefings related to a motion to amend FVC's answer, for which FVC is not requesting attorneys' fees.  (Mathiowetz Decl., Exh. 1 at 22.)

[39]Suppl. Mathiowetz Decl., ¶ 13.  Mathiowetz also notes that "[a]dditional Howrey support personnel assisted with various matters in the case, including additional paralegal support for the preparation and filing of motions and briefs with the [c]ourt, at lesser rates as set by the firm."

devices, and biology.[40]  James Hann, a partner with HBW who was retained by FVC to initially file a protest in the reissue prosecution of B-K's '084 patent, and who later provided strategic guidance to Howrey and FVC, billed between $350 and $380 per hour over the course of his involvement in this case.[41]

In support of these rates, FVC submits excerpts from relevant Price Waterhouse Coopers salary surveys.  According to one, law firms practicing intellectual property litigation nationally charged a median billing rate of $658 per hour for equity partners.  Howrey's average hourly rate of $646 for equity partners ranked 12 out of the 22 firms included in this nationwide intellectual property litigation survey group.[42]  Likewise, such firms charged a median billing rate of $416 per hour for associates; Howrey's average hourly rate for associates, $419, ranked 11 out of the 22 firms included in this nationwide intellectual property litigation survey group.[43]  FVC also submits a more particularized survey focused on Palo Alto / Silicon Valley firms.[44]  This survey excerpt indicates that law firms of comparable size to Howrey in Northern California billed a median rate of $665 for equity partners (Howrey's average billing rate of $601 ranked 23 out of 28) and billed a median rate of $431 per associates (Howrey's average billing rate of $436 ranked 13 out of 28).[45]  FVC also cites to 2007 and 2008 National Law Journal Billing Surveys, which indicate that comparable Los Angeles law firms charged similar rates as those charged in this litigation.[46]

---

[40]*Id.*, ¶ 14.

[41]*Id.*

[42]*Id.*, Exh. 7 (copy of relevant portion of 2008 Billing Rate & Associate Salary Survey [Plus] Mid-Year 'Lite' Release for Intellectual Property Litigation).

[43]*Id.*

[44]*Id.*, Exh. 8 (copy of relevant portion of 2008 Billing Rate & Associate Salary Survey [Plus] Mid-Year 'Lite' Release for Palo Alto (Silicon Valley Mega-Firms)).

[45]*Id.*

[46]Suppl. Mathiowetz Decl., Exh. 9 (copy of relevant portions of 2008 National Law Journal Sample of Law Firm Billing Rates); *id.*, Exh. 10 (copy of relevant portions of 2007 National Law

Finally, FVC references the AIPLA 2007 Report of the Economic Survey.[47]  For intellectual property lawyers practicing in Los Angeles, the median hourly rate for partners in 2006 was $485; the median hourly rate for associates during the same time was $298.[48]  The AIPLA survey also indicates that the median hourly rate for attorneys in firms with more than 150 intellectual property lawyers (like Howrey) was $500 for partners and $320 for associates; the median hourly rate for attorneys in firms with between 6 to 10 intellectual property lawyers (likes Haynes Beffel & Wolfeld) was $315 for partners and $225 for associates.[49]

In view of counsels' experience and the submitted survey data, as well as its own knowledge of prevailing rates in the Los Angeles area for intellectual property attorneys, the court concludes that FVC's rates are reasonable.  See, e.g., *Love v. Mail on Sunday*, 2007 WL 2709975, *8 (C.D. Cal. Sept. 7, 2007) ("Defendants were represented in this action by the firm Manatt, Phelps & Phillips, LLP . . . .  The personnel working on this matter were billed at the following rates: Barry Mallen, partner, $540 and $570 per hour; Joy Teitel, senior associate, $410 and $460 per hour; Lee Phillips, partner, $660 and $690 per hour; Eric Custer, senior counsel, $460 and $485 per hour; Mark Lee, partner, $560 and $590 per hour; Charles Gomez, junior associate, $305 per hour; and Bridget McLaughlin and Lindy Williams, senior paralegals, $220 and $230 per hour, and $245 per hour, respectively.  These rates are consistent with the rates

---

Journal Sample of Law Firm Billing Rates).  For example, Manatt, Phelps & Phillips charged between $495 and $850 per hour for partners (median $620) and between $290 and $505 per hour for associates (median $410).  Sheppard, Mullin, Richter & Hampton (counsel for B-K) charged between $475 and $795 per hour for partners and between $275 and $455 per hour for associates. (*Id.*, Exh. 9.)  In 2007, Manatt, Phelps & Phillips charged between $520 and $785 per hour for partners (median $590) and between $265 and $480 per hour for associates (median $415).  During the same time period, Sheppard, Mullin, Richter & Hampton charged between $425 and $795 per hour for partners and between $260 and $550 per hour for associates. (*Id.*, Exh. 10.)

[47]Suppl. Mathiowetz Decl., Exh. 11 (relevant excerpt from AIPLA 2007 Report of the Economic Survey).

[48]*Id.* at I30 (partners), I44 (associates).

[49]*Id.*

typically charged by other highly-regarded southern California law firms for similar work by attorneys of comparable experience" (citations omitted)).

## 2. Reasonableness of the Hours Charged

A court may award attorneys' fees only for the number of hours it concludes were reasonably expended litigating the case. "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434. At the outset, "[t]he fee applicant bears the burden of documenting the appropriate hours expended in litigation and must submit evidence in support of those hours worked." *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992). "'The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in submitted affidavits.'" *Common Cause v. Jones*, 235 F.Supp.2d 1076, 1079 (C.D. Cal. 2002) (quoting *Deukmejian*, 987 F.2d at 1397 (citing *Blum*, 465 U.S. at 892 n. 5 and *Toussaint v. McCarthy*, 826 F.2d 901, 904 (9th Cir. 1987)).

In its supplemental response, B-K challenges the reasonableness of FVC's hours on a variety of bases. The court addresses each argument in turn.

### a. Fees and Costs Associated with FVC's § 17200 Counterclaim

FVC asserts that, in view of the fact that its counsel obtained "excellent results," it is entitled to recover all of its attorneys' fees and expenses, including fees and costs related to its § 17200 claim.[50] B-K counters that fees cannot be awarded under § 285 for work on non-patent issues.[51] This misstates the law. Although § 285 does not authorize an award of fees for work performed on most non-patent claims, it does provide a basis for an award of fees on a non-patent claim if the issues raised by the claim are intertwined with the patent issues. See, e.g., *Beckman*

---

[50]FVC Suppl. Fees at 3, 5 ("FVC believes that under prevailing case law it is entitled to recovery of all of its attorneys fees, including those related to the § 17200 claim").

[51]B-K Suppl. Resp. at 3 (citing *Petersen Mfg. Co. v. Central Purchasing Inc.*, 740 F.2d 1541, 1551 (Fed. Cir. 1984) and *Deyerle v. Wright Mfg. Co.*, 496 F.2d 45 (6th Cir. 1974)).

1   *Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1552 n. 2 (Fed. Cir. 1989) ("LKB also

2   contends that it was improper for the district court to consider a non-patent claim, namely the

3   antitrust counterclaim, in a recovery under 35 U.S.C. § 285.  However, in an action having both

4   patent and non-patent claims, recovery may be had under § 285 for the non-patent claims if the

5   issues involved therewith are intertwined with the patent issues.  See *Stickle v. Heublein*, 716 F.2d

6   [1550,] 1564 [(Fed. Cir. 1983)].  Since LKB's antitrust claim was based on alleged inequitable

7   conduct in the PTO, this is certainly the case in the present litigation"); see also *Building*

8   *Innovation Industries, LLC v. Onken*, 473 F.Supp.2d 978, 984 (D. Ariz. 2007) ("Section 285

9   permits fees 'for time incurred in the litigation of legitimate patent claims' and non-patent 'issues

10   . . . so intertwined with . . . patent issues as to make section 285 applicable to the case in its

11   entirety'" (quoting *Interspiro USA, Inc.*, 18 F.3d at 933)).

12          Assuming, without deciding, that FVC's § 17200 counterclaim was sufficiently intertwined

13   with B-K's patent claims to be eligible for inclusion in a fees' award under § 285, the court

14   nonetheless concludes that FVC cannot recover fees or costs on the claim.  As discussed in its

15   prevailing party order, FVC was not successful on its § 17200 counterclaim: B-K prevailed on two

16   of the three aspects of the claim, and the third was dismissed.  It is therefore appropriate to reduce

17   the lodestar to reflect that fees on this claim are not being awarded.  See, e.g., *Hensley*, 461 U.S.

18   at 436 ("If, on the other hand, a [prevailing party] has achieved only partial or limited success,

19   the product of hours reasonably expended on the litigation as a whole times a reasonable hourly

20   rate may be an excessive amount.  This will be true even where the [prevailing party]'s claims

21   were interrelated, nonfrivolous, and raised in good faith"); *Deukmejian*, 987 F.2d at 1404 ("In

22   *Hensley* the Supreme Court noted that the 'results obtained' was one factor that might lead the

23   district court to adjust the presumptively reasonable lodestar calculation and that this factor 'is

24   particularly crucial where a [party] is deemed "prevailing" even though he succeeded only on

25   some of his claims for relief'" (citing *Hensley*, 461 U.S. at 434)).

26          Indeed, FVC acknowledges that the court "may draw a distinction between fees related to

27   the core patent infringement, invalidity and unenforceability claims and those related to the adjunct

28

§ 17200 claims."[52]  It states that it has reviewed its billing records and segregated the time and
fees related to the § 17200 claim to facilitate an appropriate lodestar reduction.[53]  Based on this
accounting, FVC asserts that its requested fees and costs total – $1,189,526.73 – should be
reduced by approximately five percent (to $1,125,939.62).[54]

B-K contends that this reduction "is not commensurate with the amount of time and
attention devoted to [the § 17200] claim."[55]  It argues that FVC has reduced the time logged by
only two Howrey lawyers; entries reflecting work by paralegals and other attorneys have not been
reduced.[56]  B-K proffers three spreadsheets, created from FVC's submissions, that allegedly

---

[52]FVC Suppl. Fees at 5.

[53]Id. ("FVC has meticulously reviewed its detailed billing records and noted the time and
fees related to the § 17200 claim").  FVC has submitted a spreadsheet detailing all billing records
reflecting legal services performed by Howrey LLP on its behalf with its supplemental brief.
(Mathiowetz Decl., Exh. 1.)  The spreadsheet contains twelve columns.  Column 5 "is the value
of the fees or disbursements billed to FVC [ ] for all fees and services rendered on behalf of FVC,
and before deductions related to the § 17200 claim."  (Mathiowetz Decl., ¶ 2.)  Column 9
"represents Howrey's best estimate, in percent, of the fees claimed in column 5 that relate to the
§ 17200 claim."  (Id.)  Column 12 "represents the total value of fees or expenses being claimed
related solely to the underlying patent infringement claim, i.e., excluding any fees related to the
§ 17200 claim."  (Id.)  FVC submitted a second spreadsheet detailing the billing records of
Haynes Beffel & Wolfeld LLP; attorney James Hann of this firm is outside patent counsel to FVC
and was retained to assist litigation counsel in this case.  (Id., ¶ 4.)  These records do not reflect
any reductions related to the § 17200 claim, and imply that work performed by Haynes Beffel &
Wolfeld LLP related solely to the patent claims asserted.  (Mathiowetz Decl., Exh. 2.)

[54]FVC Suppl. Fees at 1 n.1 ("FVC seeks $1,189,526.73 as the total reasonable fees for this
case (of which $1,175,007.19 was billed by Howrey and $14,519.54 was billed by Haynes Beffel
& Wolfeld).  As discussed below, FVC has separately identified those fees that are directly
attributable to its § 17200 claim.  If the Court finds that such fees are not recoverable, FVC
submits that it is entitled to recover $1,125,939.62 related solely to its defense of the patent
infringement claims (of which $1,111,420.08 was billed by Howrey and $14,519.54 was billed
by Haynes Beffel & Wolfeld); id. at 5.  By the court's own calculation, $1,189,526.73 -
$1,125,939.62 = $63,587.11.  $63,587.11 / $1,189,526.73 = 0.053.

[55]B-K Suppl. Resp. at 3-4.

[56]Id. at 4 ("For example, Fresno Valves failed to allocate approximately 5 hours of time
billed by Y. Kubicek on August 14 and 15, 2007 to inspect the Fresno Valves' lighting fixture in

reflect (1) general, vague and redacted narrative entries;[57] (2) entries associated with motions for
summary judgment;[58] and (3) entries associated with discovery that it asserts should be reduced.[59]
On the basis of its review of FVC's submissions, B-K concludes that "it [is] impossible [ ] to
ascertain all of the work that was actually devoted to the 17200 claim."  It therefore asks the court
to apply the twenty percent reduction previously adopted for costs to the fee award sought here.[60]

Having carefully reviewed the documents submitted, the court agrees that FVC has not
deducted sufficient time from the total to reflect the energy and resources actually expended on
its unsuccessful § 17200 counterclaim.  First, its proposed reduction of five percent does not
comport with the court's earlier analysis and conclusion that the counterclaim absorbed
approximately twenty percent of the parties' efforts over the course of this litigation.  Second, the
time records FVC has submitted include vague entries regarding discovery and summary judgment

---

the possession of B-K's counsel. [ ] This endeavor had nothing to do with the patent infringement
claims or defenses.  As another example, T. Chestnut spent 59.5 hours between April 1, 2008 and
April 7, 2008 largely devoted to 'prepar[ing] exhibits and other material for upcoming oppositions
to B-K's Summary Judgment Motions.' [ ] Fresno Valves filed two oppositions on April 7,
including its opposition to B-K's ultimately successful motion for summary judgment on Fresno
Valves' 17200 counterclaim, and the 25-exhibit Declaration of Duane Mathiowetz. [ ] Yet, none
of T. Chestnut's time was allocated to the 17200 claim").

[57]B-K Suppl. Resp. at 4 ("[W]ith very few exceptions, when time entries were general to
the case as a whole and when the time entries were not sufficiently descriptive to determine which
claims the work was related to, Fresno Valves failed to reduce the amounts billed to attribute for
work related to the 17200 claim.  At least some of these time entries would naturally include work
on the 17200 counterclaim, which Fresno Valves sought to bring to trial as late as June 2008");
Trusso Decl., ¶ 6; *id.*, Exh. E.

[58]Trusso Decl., ¶ 9 ("Attached hereto as Exhibit H is a true and correct copy of a
spreadsheet created at my direction reflecting those fees from FV Exhibit 1 associated with the
motions for summary judgment, excluding those properly apportioned, along with calculations
reflecting the amount that B-K request[s] [ ] be reduced [as well as] a spreadsheet created at my
direction reflecting those fees from FV Exhibit 1 (not relating to summary judgment) incurred on
researching and pursuing Fresno Valves' unsuccessful inventorship defense, along with
calculations reflecting the amount that B-K request[s] [ ] be reduced"); *id.*, Exh. H.

[59]Trusso Decl., ¶ 10; *id.*, Exh. I.

[60]B-K Suppl. Resp. at 5-6.

motion practice; given that these phases of the litigation involved both the patent and § 17200 claims, the court agrees with B-K that at least some of the time reflected in these generalized entries must have been devoted to the § 17200 counterclaim.   The records also include disbursements for costs that must have been related to the § 17200 counterclaim.   Accordingly, the court concludes that the overall hours and costs billed must be reduced further to achieve an accurate lodestar figure.   Consistent with its earlier order, the court reduces the total sum for fees and costs by twenty percent, or from $1,189,526.73 to **$951,621.38**.   With this as a base, the court next considers B-K's claims regarding excessive or unnecessary fees.[61]

### b.   Excessive or Unnecessary Fees

B-K charges that fees associated with a variety of motions and litigation activities are excessive and/or unnecessary.   Since these sums were not "reasonably expended," it asserts that they should be excluded from the total fee award.[62]

B-K first asks that the court exclude time billed for FVC's motion to dismiss its d/b/a, Vision3, arguing that the motion "could have been avoided had Fresno Valves simply provided the information requested by counsel."[63]   In granting FVC's motion and denying B-K's request for sanctions, however, the court explained that FVC had corresponded with B-K repeatedly regarding the legal status of Vision3 and that there was "no factual basis for B-K Lighting's assertion that defendants 'acted in bad faith . . .'."[64]   B-K argues alternatively that the time billed to litigate the motion was excessive: "[t]wenty-seven hours, three partners and a senior associate were simply not warranted for analyzing the simple issue of whether the dba of its own client [ ]

---

[61]The court arrived at this figure based on the following calculation:
$1,189,526.73 - $237,905.35 [0.20 x $1,189,526.73] = $951,621.38.

[62]B-K Suppl. Resp. at 6 (citing *Hensley*, 461 U.S. at 434).

[63]*Id.* at 11.

[64]See Order Granting Defendants' Motion to Dismiss and Denying Plaintiff's Motion for Sanctions, Docket No. 25 (Nov. 14, 2006) at 7-8.

was the appropriate party to be sued and [for] drafting a motion to dismiss."[65]  The court agrees that the staffing of the motion appears excessive.  Accordingly, it will award FVC fees for hours expended by lead partner Mathiowetz and senior associate Birnschein for the dismissal motion, but not for hours expended by partners Wales or Cherian or paralegal Van Gaasb.[66]  The total fees incurred for this work is thus reduced from $13,175 to $10,582.50, a subtraction totaling **$2,592.50**.[67]

B-K next contends that FVC's claim construction-related fees should be reduced because it "took a number of frivolous and unnecessary positions."[68]  Initially, FVC insisted that 29 claim terms were in dispute; B-K, by contrast, argued that only 9 required construction.[69]  By the time of the Markman hearing, the parties' joint claim construction chart reflected 21 terms in possible need of construction: of these, B-K asserted that the court needed to address only 10, while FVC maintained that all required construction.[70]  Ultimately, the court construed 10 terms;[71] it later

---

[65]B-K Suppl. Resp. at 11.

[66]See Mathiowetz Decl., Exh. 1; Trusso Decl., Exh. G.

[67]Mathiowetz Decl., Exh. 1; Trusso Decl., Exh. G.

[68]B-K Suppl. Resp. at 9.

[69]See Order Vacating Markman Hearing; Requiring Disclosure of Asserted Claims, Preliminary Infringement Contentions and Preliminary Invalidity Contentions, Docket No. 72 (Oct. 9, 2007) at 1.

[70]See Claim Construction Order, Docket No. 114 (Mar. 13, 2008) at 5

[71]*Id.* (construing 4 non-means-plus function terms ("slot," "stud member," "rotationally interacting therewith," and "interconnecting"); determining that 2 non-means-plus function terms required no construction ("tapered opening" and "tapered post"); construing 6 means-plus function terms ("first locking means," "second locking means," "first resistance means," "second resistance means," "first sealing means," and "rotational limiting means"); noting that 3 further means-plus function terms ("second sealing means," "third sealing means," and "fourth sealing means") were undisputed by the parties; and observing that the term "operatively connected" had been withdrawn from construction by FVC).

observed that FVC's approach to claim construction unnecessarily complicated the litigation.[72]

Consequently, the court concludes that a fifty percent reduction in FVC's claim construction-related fees is warranted. Using FVC's billing records, B-K has isolated the fees and costs billed for claim construction,[73] which total $96,383.44.[74] The court has checked this tabulation carefully and believes that it is accurate.[75] Accordingly, the court will subtract **$48,191.72** from FVC's fee total.[76]

---

[72]Fees Award Order at 37-38, n. 77 ("At claim construction, moreover, FVC sought construction of many more terms than B-K. Evan after the court requested that the parties narrow the focus of the claim construction dispute, FVC continued to seek construction of terms without clearly explaining why construction was needed").

[73]Trusso Decl., ¶ 5 ("Attached hereto as Exhibit D is a true and correct copy of a spreadsheet created at my direction reflecting those fees from FV Exhibit 1 associated with claim construction along with calculations reflecting the amount that B-K request[s] should be reduced"); *id.* at Exh. D.

[74]Trusso Decl., Exh. D. This sum is divided into two categories: fees associated with the first round of claim construction briefing (from July 11, 2007 through October 10, 2007, totaling $43,326.25) and fees associated with the second round of claim construction briefing (from October 25, 2007 through March 13, 2008, totaling $53,057.19). (*Id.*)

[75]On account of the fact that FVC lists multiple activities under certain time entries, B-K has approximated some of the claim construction fee entries. For example, FVC's records include a September 21, 2007 fees entry totaling $3,965.00 billed by Mathiowetz for "[p]reparing opposition to motion for reconsideration and fil[ing] same; review[ing] B-K reply claim construction brief." (Mathiowetz Decl., Exh. E at 15.) Because this total amount is not further divided (i.e., because FVC provides no additional information regarding the actual fees incurred for each of these two distinct activities), B-K divides the $3,965 subtotal by half and estimates that $1,982.50 was incurred on the claim construction-related activity. (Trusso Decl., Exh. D.) In view of FVC's lack of specificity, the court concludes that this is a reasonable approach to understanding FVC's fee totals.

[76]B-K argues that the fees associated with FVC's first round of claim construction should be reduced by seventy-five percent, and that the fees associated with the second round of claim construction should be reduced by fifty percent. (B-K Suppl. Resp. at 9.) In light of the fact that claim construction is central to patent litigation, and considering the claim construction efforts FVC was required to expend in defending this case, however, a seventy-five percent cut would be excessive.

B-K also claims that FVC's fee total should be reduced by $14,804.64,[77] the amount expended on its "frivolous motion to strike the expert report of Dr. John Pratt."[78] B-K argues that this motion was an effort to reargue the court's claim construction rulings;[79] FVC represented that B-K's submission of the Pratt infringement report alleged new grounds for infringement in violation of case management orders and discovery rules.[80]  As noted, the court's summary judgment order on the patent claims did not reach the issue of infringement.  At the time FVC filed its motion, however, it was not clear that the court would adopt this approach.  Given the procedural posture of the case at the time FVC's motion to strike was filed, the court cannot conclude that it was frivolous.  Accordingly, it declines to reduce the fee award for time billed preparing the motion.

B-K contends that FVC has billed for unnecessary or unsuccessful claims raised on summary judgment, and that these amounts ought to be reduced.[81]  The court has carefully reviewed

---

[77]Trusso Decl., Exh. F (tabulating amounts billed in FVC's Exhibit 1 for hours expended on motion to strike expert report).

[78]B-K Suppl. Resp. at 10; see also Notice of Motion and Motion to Strike B-K Lighting, Inc.'s Expert Report Re Infringement ("Motion to Strike Pratt Report"), Docket No. 172 (Apr. 7, 2008).

[79]B-K Suppl. Resp. at 10; id. at 11 ("The infringement report of B-K's expert simply added detail to its infringement contentions throughout the case").

[80]Motion to Strike Pratt Report at 1.

[81]B-K Suppl. Resp. at 12 ("In addition to the summary judgment work regarding the unsuccessful 12700 claim, the parties engaged in substantial work regarding Fresno Valves' unsuccessful inventorship defense (with no evidence of deceptive intent), Fresno Valves' unsuccessful motion for summary judgment of non-infringement, and Fresno Valves' voluminous invalidity arguments regarding prior art considered and rejected by the Patent Office and frivolous Section 112 defenses.  Fresno Valves positions on these issues were not successful, and in many instances wholly without merit.  B-K submits that Fresno Valves' fees regarding uncategorized work on motions for summary judgment should be reduced by an additional fifty percent, for a total reduction of $58,177 after the twenty percent reduction for the 17200 claim.  (Trusso Decl., Ex. H.)  An additional reduction of $14,441.25 is also appropriate for fees (not relating to summary judgment) incurred on researching and pursuing Fresno Valves' unsuccessful inventorship defense.  (See id.)").

FVC's billing record submissions, and concludes that an additional reduction beyond the § 17200 apportionment detailed above is unwarranted.  Although FVC may have expended time and energy on claims that were not ultimately successful while engaged in summary judgment proceedings on the patent-in-suit, the court is not convinced that these claims were per se unnecessary.  Most importantly, FVC ultimately prevailed on the patent-in-suit claim at the center of this litigation.  The hours logged relating to FVC's summary judgment motion practice are, with the exception of the already-excised § 17200-related entries, reasonable, and will not be further reduced.

Next, B-K argues that FVC unnecessarily prolonged the case after the court's summary judgment orders, such that the approximately $242,374.83 in fees incurred after the issuance of these orders should be reduced.[82]  The court has previously observed that FVC participated in uncooperative litigation tactics, particularly after summary judgment.[83]  Nevertheless, B-K also obstructed the efficient resolution of this case.[84]  Accordingly, the court will reduce FVC's post-summary judgment fees by fifteen percent, or **$36,356.22.**

B-K further argues that FVC should not recover fees incurred for work performed by Haynes Beffel & Wolfeld LLP.[85]  B-K contends that FVC "had well-seasoned intellectual property lawyers representing it" at Howrey, and that it "provides no reason or justification for hiring the Haynes Beffel firm to assist Howrey."[86]  Additionally, B-K alleges that, since the Haynes Beffel & Wolfeld attorneys "never appeared in the matter" and solely "advise[d] the Howrey lawyers,"

---

[82]B-K Suppl. Resp. at 7 ("These fees are excessive and should be significantly reduced by at least 75% or $181,781"); Trusso Decl., Exh. A (tabulating FVC fees incurred after May 23, 2008 – the date the court issued its summary judgment orders).

[83]Fees Award Order at 37-38 n. 77 ("After the court issued its tentative ruling regarding summary judgment, for example, which clearly stated that it deemed certain invalidity arguments moot, FVC failed to notify the court that it took the position such issues had to be tried.  This resulted in multiple filings and proceedings concerning the claims that remained in the case following issuance of the final summary judgment ruling").

[84]*Id.* at 37-38 (detailing instances of B-K's intransigence).

[85]B-K Suppl. Resp. at 13.

[86]*Id.*

their work "is more akin to the work of non-testifying experts, [fees for which] are not recoverable under § 285."[87]  B-K cites no legal authority for the novel proposition that counsel retained to advise lead litigators in a complex patent suit are somehow converted to non-testifying experts who cannot recoup fees.  Contrary to B-K's assertion, FVC has explained that Haynes Beffel & Wolfeld is outside counsel to FVC; that the firm focuses on patent, trademark, and copyright law; and that FVC retained Haynes Beffel & Wolfeld to assist litigation counsel in this matter.[88]  FVC has submitted detailed time records relating to hours billed by counsel from Haynes Beffel & Wolfeld.[89]  Having carefully reviewed these entries, the court concludes that the hours expended were reasonable and not redundant or otherwise unnecessary.  Consequently, it declines to cut these fees from FVC's overall award.

Finally, B-K asserts that FVC spent an exorbitant amount of time – 479 hours – on its fees-on-fees work.[90]  Having reviewed the FVC billing entries B-K isolated and summed to reach this figure, however, the court believes it to be inflated.[91]  Nevertheless, the court agrees that the time billed for this aspect of the litigation includes unnecessary and redundant work.  Accordingly, the court will reduce the total amount billed for fees-on-fees work, as summed by B-K in Exhibit A to the Trusso declaration, by fifteen percent, or **$27,247.69**.

---

[87]*Id.*

[88]FVC Suppl. Fees at 7; Mathiowetz Decl., ¶ 4.

[89]Mathiowetz Decl. at Exh. 2.

[90]B-K Suppl. Resp. at 7; Trusso Decl. ¶ 2 ("Exhibit A also contains a spreadsheet created at my direction reflecting the total number of billable hours spent by Fresno Valves' billers on Fresno Valves requests for attorneys' fees and expenses); *id.* at Exh. A (summary of hours associated with recovery of fees and costs).

[91]Specifically, certain entries included on B-K's Exhibit A (summary of fees-on-fees hours) involved both time spent on fees motion practice and time spent on other aspects of this litigation. For example, the May 28, 2008 entry for 12.5 hours includes time spent to "object to Plaintiff's exhibits; assess Defendant's exhibits; legal research re Section 17200 claim, attorneys fees, unenforceability and inequitable conduct" (Mathiowetz Decl., Exh. 1 at 60), yet B-K includes the entire 12.5 hours in its fees-on-fees summary.

1

2

        c.    **Fees Related to Damages Consultation by Dr. Mody and Mr.**
              **Scoppettone**

3      Next, B-K claims that FVC impermissibly attempts to recoup expert witness fees "by

4   characterizing damage experts Dr. Nisha Mody and Mr. Marc Scoppettone as 'non-attorney staff'

5   in its fee submission."[92]  As support for this contention, B-K submits printout biographies for

6   Mody and Scoppettone, who are financial analysts with CapAnalysis, LLC.[93]  B-K argues that,

7   because these consultants assisted FVC in preparing damages expert reports, they are themselves

8   expert witnesses whose fees may not be recovered.[94]

9      The Federal Circuit has held that, in view of the Supreme Court's decision in *West Virginia*

10  *Univ. Hosps., Inc. v. Casey*, 499 U.S. 83 (1991), "the term 'reasonable attorney fees' does not

11  include expert witness fees." *Amsted Industries Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374,

12  377 (Fed. Cir. 1994).  Expert witness fees must be calculated pursuant to 28 U.S.C. § 1920, not

13  35 U.S.C. § 285.  *Id.*

14     Both extant precedent and 28 U.S.C. § 1920, however, emphasize that expert *witnesses*

15  may not recover fees pursuant to § 285.  Neither Mody nor Scoppettone were designated expert

16  witnesses in this action; rather, FVC retained their consultant services to prepare reports of other

17  individuals who did serve as defendant's expert witnesses.  B-K's argument regarding fees

18  associated with these analysts is unavailing, and the court declines to cut their fees from the total

19  recoverable fees award.

20

21     [92]B-K Suppl. Resp. at 8 (quoting Mathiowetz Decl., Exh. A at 112).

22

23     [93]Trusso Decl., Exh. B.

24     [94]B-K Suppl. Resp. at 8 ("Based on their qualifications and the narrative entries for Dr.
    Mody and Mr. Scoppettone, they were clearly providing expert services to Fresno Valves.  See
25  e.g., entry dates for April 16, 17, 24, 2008 ('work on damages expert report' 'work on Fresno
    damages expert report' 'help finalize the report' 'draft exhibits for Schulz expert report').  Placing
26  Dr. Mody and Mr. Scoppettone on Howrey's invoices and/or payroll does not change the fact that
    such fees are simply not recoverable.  Therefore, all fees billed by Dr. Mody and Mr. Scoppettone
27  (totaling $57,139.50) should be reduced from Fresno Valves' recoverable fees (See Trusso Decl.,
    Ex. C)").
28

1

#### d.     B-K's Objection to FVC's Redacted Time Entries

2       Next, B-K submits that FVC's records contain partially redacted and vague entries that
3  "cannot be evaluated for reasonableness, appropriateness, or accuracy."[95]  In view of these alleged
4  deficiencies, B-K contends that "a one-half reduction of the time in the general, redacted and
5  vague entries is warranted."[96]   FVC explains that entries "deemed as containing specific work
6  product descriptions or reflecting attorney client communications have been redacted."[97]

7       B-K correctly notes that courts do, at times, reduce fee awards when presented with heavily
8  redacted time entries.  See, e.g., *World Triathalon Corp. v. Dunbar*, 539 F.Supp.2d 1270, 1285
9  (D. Haw. 2008) ("This reduction is further justified because of counsel's heavily redacted entries
10 [citing Local Rule]").  Having reviewed the submitted records, however, the court concludes that
11 FVC's redactions are appropriately limited and do not impede an assessment of the overall fee
12 award requested.  The vast majority of the time entries are not redacted at all, and not a single one
13 of 775 fee-related entries is redacted entirely.   In addition, the court finds the narrative
14 descriptions for each time entry more than adequate to ascertain how the time logged was used.
15 Accordingly, it declines to reduce FVC's fee award for vagueness or overredaction.

16
17
18
19
20

---

21       [95]*Id.* at 10 ("A number of entries are generally and vaguely described as 'research' 'trial
22 preparation,' 'prepare for trial,' 'attend to pre-trial activities,' 'review correspondence.' Further,
   a large number of the entries were partially redacted and therefore cannot be evaluated for
23 reasonableness, appropriateness, or accuracy").

24       [96]*Id.* ("The total fees for these general, vague and/or redacted entries are $130,244.  (See
25 Trusso Decl., Ex. E.)  B-K submits that this amount should be reduced by at least fifty percent
   (after the twenty percent reduction for work relating to the § 17200 claim, for a total reduction
26 of $52,098) because neither B-K nor the Court can reasonably discern whether the work was
27 appropriate or the fees were reasonable").

28       [97]Mathiowetz Decl., ¶ 1.

1                   **e.   B-K's   Request   that   FVC's   Fees   Be   Reduced   for   Alleged**

2                        **Misconduct**

3   Finally, B-K argues that FVC's "discovery abuse"[98] and behavior regarding mediation[99]

4   amounts to misconduct which merits additional cuts to the fees requested.  As detailed in the

5   court's prior orders, both parties refused to cooperate and engaged in unprofessional behavior that

6   unnecessarily complicated this litigation.  At multiple junctures, each party has moved to sanction

7   the other, which the court has declined to do in light of this mutual misconduct.  Once again, the

8   court declines to sanction one party and not the other for both sides' acrimonious behavior.

9

10                             **III.   CONCLUSION**

11   For the reasons stated, the court grants FVC's motion for attorneys' fees.  The requested

12   fee award is first reduced by twenty percent, to $951,621.38, excising fees and costs associated

13   with the § 17200 claim.  This award is further reduced as follows:

| Category | Amount |
|---|---|
| | $951,621.38 |
| Motion to Dismiss d/b/a | - $2,592.50 |
| Claim Construction | - $48,191.72 |
| Post-Summary Judgment Fees | - $36,356.22 |
| Fees-on-Fees | - $27,247.69 |
| **TOTAL FEES AWARDED:** | **$837,233.25** |

DATED: November 16, 2009

                         _Margaret M. Morrow_

                         MARGARET M. MORROW

                  UNITED STATES DISTRICT JUDGE

---

[98] B-K Suppl. Resp. at 12 ("Fresno Valves vigorously fought providing information and factual support to its defenses and counterclaims in response to straightforward interrogatories and document requests, which forced B-K to bring several motions to compel").

[99] _Id._ at 13 ("Fresno Valves consistently imposed unreasonable conditions on mediating the case, including unreasonably demanding that B-K pay for the entire mediation").